1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIEPDUC T., | Case No.: 3:19-cv-01541-RBM |
| Plaintiff, | **ORDER AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY** |
| v. | |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY, | **[Docs. 12, 16]** |
| Defendant. | |

## I.     INTRODUCTION

Plaintiff Hiepduc T. ("Plaintiff") filed a Complaint under 42 U.S.C. § 405(g) seeking judicial review of the Commissioner of the Social Security Administration's ("Defendant" or "Commissioner" or "SSA") final decision denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("the Act").  (Doc. 1.)

Before the Court are Plaintiff's Merits Brief ("Merits Brief") (Doc. 12),[1] Defendant's combined Motion for Summary Judgment and Opposition to Plaintiff's Merits Brief

---

[1] As set forth in the briefing schedule (Doc. 9), the undersigned ordered Plaintiff to file a merits brief pursuant to Civil Local Rule 7.1(e)(6)(e).  Plaintiff, however, titled the brief "Plaintiff's Memorandum in Support of Motion for Summary Judgment, Reversal or Remand of Commissioner's Administrative

1

1  ("Cross-MSJ") (Doc. 16), and Plaintiff's combined Memorandum in Opposition to
2  Defendant's Cross-MSJ and Reply (Doc. 19).

3       The parties consented to the undersigned's jurisdiction.  (Doc. 5; Gen. Or. 707.)
4  Considering the papers, the Administrative Record ("AR"), the facts, and the applicable
5  law, Plaintiff's Merits Brief is **DENIED**, Defendant's Cross-MSJ is **GRANTED**, and the
6  Administrative Law Judge's ("ALJ") decision is **AFFIRMED**.

7       **II.   BACKGROUND & PROCEDURAL HISTORY**

8       Prior to and concurrent with filing an application for a period of disability and
9  disability insurance benefits, Plaintiff participated in the state workers' compensation
10  process.  (AR at 40; *see* AR at 528-781, 806-07.)[2]  During that process, Plaintiff was
11  examined and treated by David Kupfer, M.D. ("Dr. Kupfer") from 2015 to 2018.  (*Id.* at
12  528; *see id.* at 40, 528-781, 806-07.)  From review of the AR, the disposition of the
13  workers' compensation process is unclear, although it is not determinative to any issue
14  here. (*See id.* at 40, 528-781, 806-07)

15       On January 21, 2016, Plaintiff filed an application for a period of disability and
16  disability insurance benefits under Title II of the Act.  (AR at 35; *see* Doc. 12 at 2.)  Plaintiff
17  initially alleged an onset of disability as of October 20, 2015, but later amended the onset
18  date to May 8, 2017.  (AR at 35, 37.)  Plaintiff amended the alleged onset date because
19  there were records of substantial gainful activity earnings as a forklift operator for The
20  Coca-Cola Company from 2016 and 2017.  (*Id.* at 51, 54, 67-68.)  Plaintiff stopped working
21  for Coca-Cola as of May 2017 due to layoffs.  (*Id.* at 41, 389-98.)

22       Plaintiff chiefly complains of bilateral carpal tunnel syndrome ("CTS"), ulcerative
23  colitis ("UC"), and diabetes mellitus ("DM") with diabetic peripheral neuropathy.  (*See id.*
24  at 37, 55, 60, 67.)  Plaintiff alleges his conditions and symptoms continue to worsen,

25
26  ───────────────
27  Decision" and inappropriately cited Federal Rule of Civil Procedure 56 (i.e., summary judgment).
   Hereafter, Plaintiff's brief will be referred to as a Merits Brief.
28  [2] All AR citations refer to the number on the bottom right-hand corner of the page, rather than page
   numbers assigned by the CM/ECF system.

affecting performance of activities of daily living.  (AR at 39; *see* AR at 290-95, 298-303.)
Plaintiff alleges pain in the shoulders, hands, abdomen, and numbness in his left foot.  (*Id.*
at 39.)  He also alleges he can only stand for fifteen minutes, walk for fifteen minutes, sit
for one hour, and cannot lift more than ten pounds.  (*Id.*)

The SSA denied Plaintiff's claim initially and on reconsideration.  (*Id.* at 35.)  Next,
Plaintiff requested a hearing before an ALJ, which occurred on April 11, 2018.  (*Id.*)  At
the hearing, the ALJ elicited testimony from Plaintiff and a vocational expert ("VE").  (*Id.*)

On August 7, 2018, the ALJ's written decision found Plaintiff not disabled under the
Act.  (*Id.* at 36-43.)  On July 26, 2019, after the Appeals Council denied review of the
ALJ's decision, the decision became the final decision of the Commissioner under 42
U.S.C. § 405(h).  (*Id.* at 1-6.)

### III.   SUMMARY OF ALJ'S FINDINGS

In the decision, the ALJ determined Plaintiff met the insured status requirements of
the Act through December 31, 2022.  (AR at 37.)  The ALJ then followed the five-step
sequential evaluation process to determine Plaintiff's disability status.  *See* 20 C.F.R. §
404.1520(a).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity
since May 8, 2017, the amended alleged onset date.  (AR at 37.)

At step two, the ALJ found Plaintiff suffers from the following severe impairments:
CTS, UC, and DM.  (*Id.*)  The ALJ found Plaintiff's hypertension and anemia as not severe.
(*Id.* at 37-38.)

At step three, the ALJ found Plaintiff did not have an impairment or combination of
impairments that met or medically equaled one of the listed impairments.  (*Id.* at 38.)

Next, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to
perform light work as defined in 20 C.F.R. § 404.1567(b), except he is unable to climb
ladders, ropes, or scaffolds.  (*Id.*)  The RFC included the following limitations:

[h]e is able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch,
and crawl.  He is able to occasionally use his bilateral upper extremity for gross

3

1
2
3

manipulation, fine manipulation, and reaching overhead.  He needs to avoid concentrated exposure to unprotected heights, dangerous or fast moving machinery, and cold temperatures.

4    (AR at 38.)

5        In determining the RFC, the ALJ considered all symptoms and the extent to which
6    these symptoms can reasonably be accepted as consistent with the objective medical
7    evidence and other evidence, as required by 20 C.F.R. § 404.1529 and SSR 16-3p.  (*Id.*)
8    The ALJ also considered opinion evidence consistent with 20 C.F.R. § 404.1527.  (*Id.*)

9        In analyzing the same, the ALJ assigned "[g]reat weight" to the opinion of an internal
10   medicine consultative examiner, Phong Dao, D.O. ("Dr. Dao"), finding it consistent with
11   the record.  (*Id.* at 40.)  Dr. Dao examined Plaintiff in May 2016.  (*Id.*)  Dr. Dao found, in
12   part, that Plaintiff had normal reflexes and coordination, positive bowel sounds, no acute
13   distress, and opined Plaintiff can perform work at a light exertional level.  (*Id.*)  The ALJ
14   only assigned "some weight" to the opinions of state agency medical consultants R. Jacobs,
15   M.D. ("Dr. Jacobs") and P.A. Talcherkar, M.D. ("Dr. Talcherkar"), finding their opinions
16   as to RFC "less restricting than the record supports."  (*Id.* at 41.)  Both Dr. Jacobs and Dr.
17   Talcherkar examined Plaintiff in 2016 and found him able to perform work at a medium
18   exertional level.  (*Id.*)  As to Plaintiff's involvement in the workers' compensation process,
19   the ALJ did not indicate any particular weight he assigned to Plaintiff's treating physician,
20   Dr. Kupfer.  (*Id.* at 40.)  The ALJ noted Dr. Kupfer's opinions were not binding, as they
21   were produced for the workers' compensation process and not for the SSA process.  (*Id.*)
22   But the ALJ considered Dr. Kupfer's findings and found the evaluations relevant and useful
23   in analyzing Plaintiff's RFC.  (*Id.*)  Dr. Kupfer found Plaintiff limited from repetitive
24   overhead lifting and reaching, carrying more than twenty-five pounds, and repetitive
25   bending, stooping, twisting, and turning.  (*Id.* at 40, 528-781, 806-07.)

26       Ultimately, the ALJ found Plaintiff's medically determinable impairments could
27   reasonably be expected to cause the alleged symptoms.  (*Id.* at 39.)  But the ALJ found his

28

1   statements concerning the intensity, persistence and limiting effects of these symptoms as

2   not entirely consistent with the medical evidence and other evidence of record.  (AR at 39.)

3          At step four, the ALJ found Plaintiff unable to perform any past relevant work as a

4   forklift operator, a medium job.  (*Id.* at 41.)

5          At step five, after considering Plaintiff's age, education, work experience and RFC,

6   the ALJ found there are jobs existing in significant numbers in the national economy that

7   Plaintiff can perform.  (*Id.*)  Specifically, the ALJ found Plaintiff able to perform jobs at

8   the light exertional level such as a count clerk, furniture rental clerk, and recreational

9   vehicle rental clerk. (*Id.* at 41-42.)  Because the ALJ found Plaintiff capable of performing

10  jobs existing in significant numbers in the national economy, the ALJ determined Plaintiff

11  not disabled under the Act.  (AR at 41-42; 20 C.F.R. § 404.1520(g)(1)).

## IV.   ISSUE IN DISPUTE

13         This Court's review is limited to two issues:

14         1.  Did the ALJ fail to consider Plaintiff's impairments in combination and thus err

15  as a matter of law?  (Doc. 12 at 8-9; Doc. 16-1 at 7-8; Doc. 19 at 2-3.)

16         2.  Is the ALJ's decision supported by substantial evidence?  (*See* Doc. 12 at 9; Doc.

17  16-1 at 4-9; Doc. 19 at 3.)

## V.   STANDARD OF REVIEW

19         The Act provides for judicial review of a final agency decision denying a claim for

20  disability benefits in federal district court. 42 U.S.C. § 405(g).  "[F]ederal court review of

21  social security determinations is limited." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d

22  1090, 1098 (9th Cir. 2014).  A federal court will uphold the Commissioner's disability

23  determination if it is free of legal error and is supported by substantial evidence." *Garrison*

24  *v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r Soc. Sec. Admin.*,

25  454 F.3d 1050, 1052 (9th Cir. 2006)).  Substantial evidence means "more than a mere

26  scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person

27  might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028,

28  1035 (9th Cir. 2007) (internal citation omitted).  In reviewing whether the ALJ's decision

1  is supported by substantial evidence, the Court must consider the record as a whole,

2  "weighing both the evidence that supports and the evidence that detracts from the

3  Commissioner's conclusion . . . ." *Lingenfelter*, 504 F.3d at 1035 (quoting *Reddick v.*

4  *Chater*, 157 F.3d 715, 720 (9th Cir. 1998)).

5       The ALJ is responsible for "determining credibility, resolving conflicts in medical

6  testimony, and for resolving ambiguities." *E.g.*, *Garrison*, 759 F.3d at 1010 (quoting

7  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). When evidence supports more

8  than one rational interpretation, the ALJ's conclusion must be upheld. *E.g.*, *Batson v.*

9  *Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Stated differently, when

10  "the evidence can reasonably support either affirming or reversing a decision, [the Court]

11  may not substitute [its] judgment for that of the [ALJ]." *Garrison*, 759 F.3d at 1010

12  (internal citation omitted). Rather, the Court only reviews the reasons provided by the ALJ

13  and may not affirm the ALJ on other grounds. *Id.* (internal citation omitted).

## VI.   **DISCUSSION**

15       Plaintiff contends the ALJ's decision should be reversed or remanded for

16  committing legal error by failing to consider Plaintiff's impairments in combination

17  anywhere in the decision. (Doc. 12 at 6, 8-9.) Plaintiff also generally challenges the RFC

18  determination, because it did not include postural limitations. (*See* Doc. 12 at 9; Doc. 19

19  at 3.) Defendant counters that the ALJ properly considered the medical opinions, each

20  allegedly disabling condition, and how the alleged conditions affect Plaintiff's ability to

21  work. (Doc. 16-1 at 8.) Defendant argues the ALJ's RFC finding is properly supported by

22  substantial evidence. (*Id.*)

### A.   The ALJ Did Not Commit Error as a Matter of Law

24       As outlined below, the ALJ did not err as a matter of law, because he properly

25  considered Plaintiff's impairments in combination at step three of the sequential

26  evaluation. (AR at 39); *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995) (citing 20 C.F.R.

27  § 404.1526(a)). Moreover, the portions of the ALJ decision that Plaintiff challenges for

28  considering the impairments individually concern the RFC analysis which does not require

1  impairments to be considered in combination.  (*See* Doc. 12 at 6, 8-9); *see also Lester*, 81

2  F.3d at 828; *see also* 20 C.F.R. § 404.1526(a); *see also Burch v. Barnhart*, 400 F.3d 676,

3  679 (9th Cir. 2005).

4              *i.  The ALJ Properly Considered Plaintiff's Impairments in Combination*

5         In evaluating plaintiffs with multiple impairments, the ALJ "must consider 'whether

6  the combination of . . . impairments is medically equal to a listed impairment.'"  *Lester*, 81

7  F.3d at 829.  But the ALJ "is not required to discuss the combined effects of a [plaintiff]'s

8  impairments or compare them to any listing in an equivalency determination unless the

9  [plaintiff] presents evidence in an effort to establish equivalence."  *Burch*, 400 F.3d at 683

10  (citing *Lewis v. Apfel*, 236 F.3d 503, 514 (holding the ALJ's failure to consider equivalence

11  was not reversible error, because the plaintiff did not offer any theory, plausible or

12  otherwise, as to how his impairments combined to equal a listing impairment)); *Aguilar v.*

13  *Colvin*, 19-CV-891-BEN-NLS, 2014 WL 1653109, at *6 (S.D. Cal. April 22, 2014).

14         Here, the ALJ properly considered Plaintiff's impairments in combination in his

15  step-three analysis.  The ALJ's decision discusses the applicable standard, Plaintiff's

16  combination of impairments, the medical record relied upon, and the specific listings

17  Plaintiff did not meet or medically equal.  (AR at 38 (stating, "[Plaintiff] does not have an

18  impairment or combination of impairments that meets or medically equals the severity of

19  one of the listed impairments . . . The undersigned has reviewed the medical record and

20  find[s] that . . . [Plaintiff's] impairments do not meet or medically equal listings 5.00, 9.00,

21  11.00 or any other listing.").)  In the ALJ's decision, he discussed and evaluated Plaintiff's

22  CTS, UC, and DM, the medical record, and the medical opinions in making his decision.

23  (*See id.* at 38-41.)  The applicable law "simply requires an ALJ to discuss and evaluate the

24  evidence that supports [his] conclusion; it does not specify that the ALJ must do so under

25  the [step three] heading" alone.  *See Lewis*, 236 F.3d at 513.

26         Further, although the ALJ considered the impairments in combination, he was "not

27  required to discuss the combined effects of [Plaintiff's] impairments or compare them to

28  any listing . . . ."  *See Burch*, 400 F.3d at 683.  This is because Plaintiff failed to "present[]

                                                    7

evidence in an effort to establish equivalence" to a listing. *Id.* Plaintiff failed to offer any "theory, plausible or otherwise, as to how his [CTS, UC, and DM] combined to equal a listed impairment." *See Lewis*, 236 F.3d at 512, 514 (upholding in part ALJ decision stating "[plaintiff] does not have an impairment or combination of impairments listed in or medically equal to one listed in the regulations."); *see also Burch*, 400 F.3d at 683. Nor has Plaintiff "pointed to evidence that shows that his combined impairments equal a listed impairment." *Lewis*, 236 F.3d at 514; (*see* Doc. 12 at 8-9; *see also* AR at 48-80.) Indeed, the ALJ decision specifically noted this absence of argument: "[Plaintiff] does not argue that his impairment or combination of impairments meet or medically equal a listed impairment." (AR at 38.)

Not only did the ALJ specifically analyze Plaintiff's combination of impairments at step three, but Plaintiff failed to offer any argument that his combination of impairments meets or equals a listing. (*See* Doc. 12.) Thus, there is no error in the ALJ's decision as to his step three determination.

### ii. The Requirement to Consider Impairments in Combination is Limited to Step Three of the Five-Step Sequential Analysis

Plaintiff attempts to impose the step three requirements to consider impairments in combination to the ALJ's RFC analysis. (Doc. 12 at 8-9; AR at 38-41.) But the requirement to consider impairments in combination is limited to step three of the five-step analysis. *See Lester*, 81 F.3d at 828; *see also* 20 C.F.R. § 404.1526(a); *see also Burch*, 400 F.3d at 679. It does not extend to the RFC analysis. *See Lester*, 81 F.3d at 828; *see also* 20 C.F.R. § 404.1526(a). Indeed, the RFC analysis has its own standard to which the ALJ is bound.

If a plaintiff's impairments do not meet or equal a listed impairment, then the ALJ will assess the RFC. 20 C.F.R. § 404.1520(e). In analyzing the RFC, "an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms . . . that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir.

1  2006); *see* SSR 96-8p; *see also* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   Careful

2  consideration must be given to "any evidence about symptoms, 'because subjective

3  descriptions may indicate more severe limitations or restrictions than can be shown by

4  medical evidence alone.'"   *Robbins*, 466 F.3d at 883 (citing SSR 96-8p).   The RFC is used

5  to determine if the plaintiff can perform past relevant work or adjust to other work.   20

6  C.F.R. § 404.1520(e).

7      Here, Plaintiff generally alleges the ALJ failed to consider Plaintiff's impairments

8  in combination.   (*See* Doc. 12 at 8-9; Doc. 19 at 2-3.)   And where Plaintiff cites to the

9  record, he questions the ALJ's RFC and step-four analysis.   (AR at 38; *see* Doc. 12 at 8-

10 9.)   At that portion of the analysis, the ALJ analyzed Plaintiff's CTS, UC, and DM

11 individually to determine Plaintiff's RFC.   (*Id.*)

12     Plaintiff does not offer any caselaw to support extending the requirement to consider

13 impairments in combination to the RFC analysis.   (*See* Docs. 12, 19.)   The case law that

14 Plaintiff cites, *Lee v. Colvin*, relies upon Ninth Circuit precedent which reiterates the

15 requirement to consider impairments in combination at the step three listings stage.   (Doc.

16 12 at 8; *Lee*, 197 F. Supp. 3d 1237, 1247 (D. Or. 2016) (citing *Lester*, 81 F.3d at 830).)

17 Specifically, the court in *Lester* held that "physical and mental impairments are so

18 inextricably linked, the [ALJ] must consider whether these impairments *taken together*

19 result in limitations equal in severity to . . . *the listings*."   *Lester*, 81 F.3d at 829-30

20 (emphasis added).

21     Pursuant to *Lester*, the ALJ was not required to consider Plaintiff's impairments in

22 combination in his RFC analysis.   81 F.3d at 828.   As such, the ALJ did not err as a matter

23 of law in this regard.

24     **B.**     **The ALJ's Decision is Supported by Substantial Evidence**

25     In addition to alleging legal error, Plaintiff challenges the ALJ's RFC determination,

26 including the ALJ's imposition of postural limitations.   *See supra* Part VI.A., pp. 6-9; (Doc.

27 12 at 9; Doc. 19 at 3.)

28 / / /

9

1
2

      *i.   The RFC Determination is Supported by Medical Evidence of Record,*
          *Plaintiff's Statements, and Medical Opinions*

3         As outlined below, the ALJ's RFC determination is supported by substantial

4  evidence, as he relied upon the medical evidence of record, Plaintiff's own statements, and

5  the medical opinions of record.  (AR at 37-41.)

6                  1.  Medical Evidence of Record

7         The ALJ reviewed Plaintiff's medical history regarding his severe impairments:

8  CTS, UC, and DM.  (AR at 39-40.)  The ALJ cited instances where Plaintiff's impairment

9  allegations were either partially or wholly unsupported by the medical records.

10        First, the ALJ examined Plaintiff's CTS records.  (*Id.* at 39, 528-781.)  Testing and

11  notes from 2015 revealed chronic right medial neuropathy, tenderness over carpal tunnels,

12  limited range of motion, and positive Tinel, Phalen, and Durkin signs.  (*Id.*)  But the ALJ

13  also cited evidence where Plaintiff exhibited intact hand strength and reported no loss of

14  muscle bulk in the upper extremities.  (*Id.*)  Further, despite allegations of disabling CTS,

15  notes from March 2016 and September 2017 revealed Plaintiff had full range of motion in

16  the extremities without weakness or limitations and 5/5 strength.  (*Id.* at 39, 782-805.)

17        Next, the ALJ examined Plaintiff's UC records.  (*Id.* at 39, 409-72, 484-92, 506-14,

18  783-94, 809-14, 851-56.)   The ALJ determined—despite allegations of worsening

19  symptoms—the record revealed medication stabilized Plaintiff's symptoms.  (*Id.* at 39.)

20  Specifically, the ALJ cited notes from a 2016 medical visit where Plaintiff denied concerns

21  and reported his UC controlled with medication.  (*Id.* at 39, 809-14, 851-56.)  The ALJ also

22  cited treatment notes from September to November 2017 where, despite allegations of

23  frequent UC flare-ups, Plaintiff denied any gastrointestinal symptoms.  (*Id.* at 39, 786-94.)

24  Lastly, the ALJ cited a January 2018 doctor's visit documenting complaints of abdominal

25  pain, but March 2018 notes indicated Plaintiff had no abdominal tenderness.  (*Id.* at 39,

26  783-85.)

27        Finally, the ALJ reviewed Plaintiff's DM records.  (*Id.* at 40, 377-407, 501-781, 808-

28  14, 851-56.)  The ALJ found the record did not support a finding that Plaintiff's DM is so

1   severe as to be disabling. (AR at 40.) The ALJ cited treatment notes from 2017 and 2018,

2   where Plaintiff reported feeling better with no limitations on daily living and compliance

3   with medication. (*Id.* at 40, 782-805.) These examinations revealed normal physical

4   exams, sensation, and 5/5 strength. (*Id.*) The ALJ also cited treatment notes from other

5   providers which revealed no DM complaints. (*Id.* at 40.) The ALJ concluded no evidence

6   of record revealed complications or end organ damage resulting from Plaintiff's DM,

7   except foot numbness. (*Id.* at 40, 377-407, 501-781.)

8       As stated above, the ALJ found Plaintiff's impairment allegations as either partially

9   or wholly unsupported by the medical evidence. (*Id.* at 39.) Given the foregoing medical

10  evidence of record cited by the ALJ, (*See id.* at 39-40, 377-407, 409-72, 484-92, 501-781,

11  783-85, 782-805, 808-14, 851-56); *see also Taber v. Astrue*, 383 F. App'x 664, 664 (9th

12  Cir. 2010) (upholding ALJ determination as supported by substantial evidence where

13  medical records indicated malingering and allegations lacked supporting medical

14  evidence.).

15          2. Plaintiff's Statements

16      The ALJ also assessed the credibility of Plaintiff's statements in the record and at

17  the hearing in finding Plaintiff capable of performing work at the light level. (AR at 41.)

18  In assessing credibility, the ALJ chiefly relied upon Plaintiff's July 2017 medical report.

19  (*Id.* at 41, 389-98.) There, Plaintiff told the doctor he was laid off in May 2017 due to a

20  warehouse closure at Coca-Cola. (*See id.* (record stating "[h]e was laid off on [May 17,

21  2017] due to the warehouse closing; he was not fired for cause.").) This is in direct conflict

22  with Plaintiff's hearing testimony: "Q: why did you stop working in 2017? A: My hand,

23  my shoulder, my leg, and my hip, my neck was [sic] hurting . . . Q: Did you quit or were

24  you let go . . . ? A: I just retired." (*Id.* at 54, 68-69.)

25      Given Plaintiff's conflicting claims as to his reason for stopping work, the ALJ is

26  permitted to resolve conflicts in the testimony and discredit Plaintiff's statements.

27  *Garrison*, 759 F.3d at 110. Moreover, an ALJ may rely upon a plaintiff's own statements

28  that he stopped working for non-medical reasons. *See Bruton v. Massanari*, 268 F.3d 824,

1  828 (9th Cir. 2001); *see also Williams v. Colvin*, 609 F. App'x 495, 496 (9th Cir. 2015)

2  (stating, "[s]ubstantial evidence supports [the ALJ's finding,] . . ." in part because he

3  "permissibly relied on [Plaintiff's] own report that he had stopped working . . . not because

4  of medical problems but, rather, because he was laid off.").

5       Similar to *Bruton* and *Williams*, the ALJ's RFC determination is supported by

6  substantial evidence as he properly relied upon Plaintiff's own report that he stopped

7  working due to non-medical reasons.

8                    3.  Medical Opinions

9       Finally, the ALJ properly relied upon examining and non-examining medical

10  opinions and treatment history, in making his RFC determination.  (AR at 39-41.)

11       The ALJ reviewed the opinions and/or treatment records from examining physician

12  Dr. Dao, treating physician Dr. Kupfer, and two state agency medical consultants.  (*Id.* at

13  40, 528-781, 806-07, 869-84.)  The ALJ gave Dr. Dao's opinion "[g]reat weight," finding

14  it consistent with the record.  (*Id.* at 40; *see id.* at 869-84.)  Dr. Dao's opinion was the most

15  recent and found Plaintiff able to perform work at the light exertional level, including

16  frequent use of the upper extremities.  (*Id.* at 40, 869-84.)  Dr. Dao found Plaintiff in no

17  acute distress and he exhibited normal results for bowel sounds, reflexes, gait, tone, and

18  5/5 strength.  (*Id.*)  The ALJ also considered Dr. Kupfer's findings and conclusions

19  regarding Plaintiff's functional limitations, but did not give specific weight to the opinion.

20  (*Id.* at 40, 528-781, 806.)  The ALJ noted Dr. Kupfer's opinion was not binding because it

21  was generated for Plaintiff's workers' compensation case.  (*Id.* at 40.)  The ALJ also

22  examined and cited the opinions of state agency medical consultants Dr. Jacobs and Dr.

23  Talcherkar.  (*Id.* at 40, 82-91, 93-102.)  Both doctor's opinions found Plaintiff able to

24  perform work at the medium exertional level, with limitations on bilateral upper extremities

25  and exposure to extreme cold.  (*Id.* at 41, 82-102.)  The ALJ, however, only gave these

26  doctors' opinions "some weight," finding their determined RFCs "less restricting than the

27  record supports."  (*Id.*)

28  / / /

                                    12

1    The ALJ's reliance on Dr. Dao's opinion—as an examining source—is substantial

2    evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining

3    source's "opinion[,] alone constitutes substantial evidence, because it rests on his own

4    independent examination of [the Plaintiff]." *Id.* As to Dr. Kupfer's workers' compensation

5    examination, this assessment is analogous to that of a second examining physician

6    conducting an independent examination and "thus qualifies as substantial evidence." *See*

7    *Ragudo v. Saul*, 411 F. Supp. 3d 1125, 1131 (S.D. Cal. 2019) (citing *Tonapetyan*, 242 F.3d

8    at 1149; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (stating, "to the extent that [a

9    physician's] opinion rests on objective clinical tests, it [is] substantial evidence.")). Both

10   Dr. Dao's and Dr. Kupfer's last examinations occurred after Plaintiff's alleged onset date

11   of disability, and thus both doctors analyzed Plaintiff during the period relevant to the

12   ALJ's determination. (*See* AR at 528-781, 806, 869-84.) Although the ALJ found the state

13   agency medical consultants opinions' not wholly consistent with the record, their

14   determinations also contribute to the ALJ's findings and in part constitute substantial

15   evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("[t]he opinions of

16   non-treating or non-examining physicians may also serve as substantial evidence when the

17   opinions are consistent with independent clinical findings or other evidence in the record");

18   *see also Garcia v. Berryhill*, 765 F. App'x 176, 176 (9th Cir. 2019) ("[the ALJ] reasonably

19   determined that the opinions of the examining and non-examining physicians regarding

20   [plaintiff's] capacity were consistent with the medical record as a whole and were entitled

21   to significant weight" and served as substantial evidence.) (citations omitted).

22        The ALJ properly analyzed all available medical opinions and cited to the same to

23   support his RFC determination. This is yet another basis to find the ALJ's decision is

24   supported by substantial evidence.

25              *ii. The RFC Determination Properly Included Postural Limitations*

26        Plaintiff cites to the ALJ's alleged failure to include postural limitations in his RFC

27   determination as another ground for reversal or remand. (*See* Doc. 12 at 9.) The ALJ,

28   however, properly included postural limitations in his RFC determination. (AR at 38.)

"When the limitations and restrictions imposed by [a plaintiff's] impairments and related symptoms . . . affect only [the] ability to meet the demands of jobs other than the strength demands," the plaintiff has "only non-exertional limitations or restrictions." *See* 20 C.F.R. § 416.969a(c)(1). Postural limitations are non-exertional limitations. *See Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999). "Postural limitations or restrictions [are] related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling . . ." SSR 96-9p; *see Grigsby v. Colvin*, No. CV 12-07062-VBK, 2013 WL 3070999 at *3 (C.D. Cal. June 18, 2013); *see also* 20 C.F.R. § 416.969a(c)(vi) (stating, "some examples of nonexertional limitations include . . . [y]ou have difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.").

Here, Plaintiff contends the ALJ "makes no such findings," because "[p]ostural limitations are generally considered to be limitations on posture, *i.e.*, the requirement for a sit/stand option." (Doc. 12 at 9.) But Plaintiff's proposed definition is too limiting, runs contrary to SSA rulings, regulations, and case law. The RFC determination properly included postural limitations. The ALJ determined Plaintiff could "occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl[,] . . . [and] use his bilateral upper extremity for gross manipulation, fine manipulation, and reaching overhead." (AR at 38.) These limitations are of the same kind explicitly contemplated by applicable SSA rulings, regulations, and case law. *See* SSR 96-9p; *see Grigsby*, 2013 WL 3070999, at *3; *Tackett*, 180 F.3d at 1102; *see also* 20 C.F.R. § 416.969a(c)(vi). As such, Plaintiff's postural limitations argument is rejected.

In sum, the undersigned finds the ALJ properly considered Plaintiff's impairments in combination and the RFC determination is supported by substantial evidence. *Lester*, 81 F.3d at 829; *Burch*, 400 F.3d at 683; SSR 96-9p; *see Grigsby*, 2013 WL 3070999, at *3; 20 C.F.R. § 416.969a(c)(vi); *Robbins*, 466 F.3d at 883; *Tonapetyan*, 242 F.3d at 1149. As such, Plaintiff's Merits Brief is **DENIED**, Defendant's Cross-MSJ is **GRANTED**, and the ALJ's decision is **AFFIRMED**.

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VII.   **CONCLUSION**

For the reasons given, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error.  Accordingly, **IT IS HEREBY ORDERED:** (1) Plaintiff's Merits Brief is **DENIED**; (2) Defendant's Cross-MSJ is **GRANTED**; and (3) the ALJ's decision is **AFFIRMED**.  The Clerk of Court shall enter Judgment accordingly.

**IT IS SO ORDERED**.

Dated:  September 14, 2020

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE

19-cv-01541-RBM